1
2
3
4
5
6
7
8
9

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 9 2018

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 ANTONIO PURECO, a California individual; and DAVID CARRILLO, by and through his Guardian Ad Litem, Felipe Carrillo,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, an Illinois Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-02079-SVW-FFMx [Hon. Stephen V. Wilson]<br><br>[PROPOSED] FINAL JUDGMENT |

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
JS-2/JS-3 _____
Scan Only _____

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

- 1 -

1  Plaintiffs Antonio Pureco's and David Carrillo's Complaint stated causes of
2  action for Breach of the Implied Covenant of Good Faith and Fair Dealing and
3  Breach of Contract against Allstate Insurance Company.
4      On November 28, 2018, this Court granted Allstate Insurance Company's
5  Motion for Summary Judgment pursuant to FRCP 56 which adjudicated all of
6  Plaintiffs' claims and causes of action in favor of Allstate Insurance Company. A
7  copy of the Court's Order is attached hereto as Exhibit A. (Dkt. 21.)
8      IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment
9  is entered in favor of Allstate Insurance Company and against Plaintiffs, and the
10  Plaintiffs take nothing by their complaint against Allstate Insurance Company.

14  Date: 12/15/18

Hon. Stephen V. Wilson
Judge, United States District Court

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   IN CHAMBERS ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [15]

## I.   Introduction

On November 16, 2017, Plaintiffs Antonio Pureco and David Carrillo filed this action against Defendant Allstate Indemnity Company in state court for breach of insurance contract and breach of the implied covenant of good faith and fair dealing. Dkt. 1-1 ("Compl."). Defendant removed the action to this Court on March 13, 2018. Dkt. 1. Presently before the Court is Defendant's Motion for Summary Judgment ("Mot."). Dkt. 15.

## II.   Factual Background

On February 25, 2014, Plaintiffs were in an automobile accident. Plaintiffs' Statement of Genuine Issues of Material Fact ("PSMF"), Dkt. 17-2, ¶ 1. According to Carrillo, the vehicle in front of him, driven by Pureco, pulled over to the right as if it were making a right turn into a driveway, at which time Carrillo moved to the left in order to pass on the left. *Id.* ¶ 4. Pureco then made a U-turn without signaling, and Carrillo hit him. *Id.*

At the time of the accident, Carrillo was driving a vehicle that was owned by his father, Felipe Carrillo. *Id.* ¶ 2. The vehicle that Carrillo was driving was insured under an Allstate automobile policy with liability limits of $100,000 per person. *Id.* ¶ 3.

Initials of Preparer                                   :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

On March 5, 2014, Defendant received a letter from attorney Andrew Zeytuntsyan stating that he was representing Pureco. *Id.* ¶ 5. The letter did not enclose any medical records or provide any information regarding Pureco's injuries. *Id.* The letter did enclose a medical authorization for USC Medical Center, but the letter authorized disclosure of medical records only to "The Law Offices of Andrew Zeytuntysan, PC." *Id.* ¶¶ 5-6. On March 6, 2014, Zeytuntsyan sent a letter to Defendant instructing it to "disregard" the authorization he had sent the day before. *Id.* ¶ 7. He enclosed another authorization form that did not comply with the HIPAA statute because it did not contain various recitations as required under the law, such as a "description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion."[1] *Id.* ¶ 8. On March 12, 2014, Defendant sent a letter to Zeytuntsyan, asking him to provide any medical records that he had and to make Pureco available for a recorded statement. *Id.* ¶¶ 10-11. Defendant followed up on March 14, 2014 with a letter to Zeytuntsyan asking for copies of Pureco's medical records and bills. *Id.* ¶ 14. Zeytuntsyan would not allow Allstate to interview Pureco and did not reply to the March 14, 2014 letter. *Id.* ¶¶ 12, 15.

On March 17, 2014, Defendant received a copy of the traffic collision report, which concluded that Pureco caused the accident by committing an unsafe U-turn—while also noting that Carillo was traveling at a speed of 48 miles per hour. *Id.* ¶ 16. The report also stated that Pureco was transported by ambulance to USC Medical Center with chest and leg trauma, and that Pureco had been trapped inside his vehicle and made no statements due to his injuries. *Id.* ¶ 17. Furthermore, a witness described the accident as a "T-bone" accident, and stated that Pureco was knocked unconscious, was laying across both the driver's seat and the passenger seat, was bleeding from the head, needed to be cut out of his car, and was still unconscious when he was put into the ambulance. *Id.* ¶ 19; Dkt. 17-7 at 86:6-87:14. Based on the information that it had reviewed by March 2014, Defendant assigned 75% liability to Pureco and 25% liability to Carrillo for evaluation purposes. PSMF ¶ 20.

On March 26, 2014, Zeytunsyan faxed a letter to Defendant demanding the $100,000 policy

---

[1]     Plaintiffs do not dispute Defendant's contention that the authorization form was not HIPAA-compliant. Rather, Plaintiffs contend that, despite any deficiencies with the form, Pureco's subsequent counsel was able to obtain records from USC Medical Center using the form. *Id.* ¶ 8. Plaintiffs further allege that Defendant never attempted to submit the March 6 authorization in conjunction with the March 5 authorization. *Id.*

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|----------|------------------------|------|-------------------|

| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* |
|-------|---------------------------------------------------|

limits on behalf of Pureco. *Id.* ¶ 21; Dkt. 15-8, Ex. 12, at AIC 238-241. The letter provided, in pertinent part, as follows:

***

       Your Insured: Felipe Carrillo

***

       In light of the severe injuries sustained by Mr. Pureco as the direct result of the negligence of your insured [Carrillo], we hereby make a demand for policy limits as full and final settlement of Mr. Pureco's claim.

       Please be advised that these policy limits demands are expressly conditioned on your insured providing us with all of the following no later than April 14, 2014 at 8:30 a.m.:

***

       3. A release for Felipe Carrillo's policy limits.

       Additionally, your insured, Felipe Carrillo, must also provide a declaration under penalty of perjury no later than April 14, 2014 at 8:30 a.m. as to the following:

***

       11. Felipe Carrillo does not have any equity in any real property in excess of $100,000 . . . .

***

       Before this letter's conditional policy limits settlement offer can be

                                          : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

accepted by you on behalf of your insured, you must comply completely, not just substantially, with the following conditions precedent, and these conditions precedent must be completely performed by you before 8:30 a.m., April 14, 2014:

    1. You must deliver to my office a draft/check or drafts/checks equal to the total amount of all available liability insurance policy limits, made payable to "Antonio Pureco and his attorneys The Law Offices of Andrew Zeytuntsyan, P.C." with no other payees;

                \*\*\*

    3. You must timely deliver to my office the appropriate Release of All Claims form[2];

                \*\*\*

    5. . . . [I]f you do not understand any portion of this instant letter, or if you believe that any portion of this instant letter cannot be complied with for any reason, then this instant conditional policy limit settlement offer letter requires you, as another condition precedent to be performed by you at or before the time period mentioned above, to communicate in writing to my office whatever "problems" you deem to exist. If your written "problems" establish good cause, then my office will entertain an extension of time within which you may accept my client's conditional policy limits settlement offer.

                \*\*\*

---

[2]    Robin Andrews, Defendant's claim representative primarily responsible for Pureco's claim against Carrillo, stated in her deposition that she understood a "release of all claims" to "[r]eleas[e] all parties, insureds, drivers that are related to the claim." Dkt. 17-7, Ex. 1, at 120:12-22.

                                       :

Initials of Preparer

                        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

Time is of the essence. Therefore, failure on your part to completely perform all of the above conditions precedent at or within the time limit stated above will be deemed to be a rejection of this letter's conditional policy limits settlement offer.

\*\*\*

Please be advised that strict compliance with the terms and conditions of this demand is required in order to settle this matter and protect your insured from personal responsibility.

Dkt. 15-8, Ex. 12, at AIC 238-41.

There is a technical factual dispute as to whether Zeytuntsyan provided any medical records or bills with this letter. Defendant argues that Zeytuntsyan did not; Plaintiffs argue that the letter provided an AMR Ambulance Report and the Fire Department Report, both of which contained medical information.[3] PSMF ¶ 24. The AMR Ambulance Report stated that "Jaws of Life" were used to remove Pureco from the vehicle, that he exhibited "breathing difficulty," that he was "unresponsive," that he had a three-inch laceration to the back of his head and abrasions to his upper back, and that he scored a 6 on the Glasgow Coma Scale ("GCS"). *Id.* ¶ 26. Fire Department personnel also recorded GCS scores of 5 and 7. Dkt. 17-5, ¶ 8. Plaintiffs' expert, a board-certified neurologist, states that the GCS is a neurological scale designed to give a reliable and objective measurement of a person's conscious state for initial assessments as well as for prognostic purposes. PSMF ¶ 29; Dkt. 17-5, ¶ 9. According to the expert, a GCS score of 8 or less is indicative of a severe head injury. PSMF ¶ 29; Dkt. 17-5, ¶ 12. The expert concluded that all of the available information, including the GCS score information and the context of the accident (including that it was a broadside motor vehicle collision to the driver's side of Pureco's vehicle), indicated that major traumatic brain injury had more than likely occurred. Dkt. 17-5, ¶ 13. The AMR Ambulance Report also confirmed that Pureco was insured with Medi-Cal. PSMF ¶ 27.

---

[3] Because Defendant concedes that these reports were provided, PSMF ¶ 25, the dispute is over the narrow and immaterial issue of whether the records can be categorized as "medical."

Initials of Preparer : 

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

Defendant did not feel that there was sufficient information to evaluate Pureco's injury claim. *Id.* ¶ 33. Consequently, on March 27, 2014, it sent a letter to Zeytuntsyan stating that "[m]edical records [were] needed to evaluate this loss" and seeking authorization to obtain additional medical records. *Id.* ¶¶ 34-35. On March 28, 2014, Pureco's records from USC Medical Center were made available to one of Zeytuntsyan's employees for copying. *Id.* ¶ 37. On March 31, 2014, Zeytuntsyan sent a letter to Defendant stating that Pureco had suffered significant injuries from which he would never fully recover, although the letter did not identify the injuries or provide documentation beyond the traffic collision report. *Id.* ¶ 38. On April 3, 2014, Defendant sent a follow-up letter to Zeytuntsyan seeking additional records. *Id.* ¶ 40.

On April 11, 2014 (a Friday) at 4:39 p.m., Zeytuntsyan faxed a letter to Allstate adjuster Robin Andrews enclosing a copy of Pureco's two-page discharge summary from USC Medical Center. *Id.* ¶ 42. This summary showed that Pureco had suffered a brain injury and fractured pelvis, and that Pureco had spent more than three weeks in the hospital before being discharged. *Id.* Andrews' voicemail message advised that her working hours were 7:30 a.m. to 3:30 p.m.[4] *Id.* ¶ 43. On April 11, at the time of Zeytuntsyan's fax, Andrews' message further advised that she would be out of the office on April 14, 2014. *Id.* The parties have stipulated that Defendant's "Casualty Claim Handling Manual" provided that, in order to respond to a time-limited policy limits demand, all email must be monitored during an adjuster's absence and, if necessary, managers or other adjusters must be provided with access. Dkt. 17-1, ¶ 6. In addition, managers are automatically notified of any policy limits demands. Dkt. 17-7, Ex. 1, at 74:20-75:2. Andrews testified that she was out of the office all day on April 14, 2014, and that no one was assigned to monitor her claims in her absence. *Id.* at 144:17-145:8.

According to Defendant, Andrews first saw the April 11, 2014 fax when she returned to the office on Tuesday, April 15. PSMF ¶ 45. However, Plaintiffs contend that someone at Allstate saw the information prior to April 15, because the fax was entered into Defendant's claim notes on April 14, 2014 at 10:20 a.m. Central Time. Dkt. 17-7, Ex. 7, at CN 23. Upon reviewing the April 11, 2014 fax when she returned to the office on Tuesday, April 15, 2014, Andrews determined that the information in

---

[4]  Andrews' office hours are disputed. According to Plaintiffs, every Allstate letter sent by Andrews to Zeytuntsyan identified office hours as "Mon - Fri 8:00 a.m. - 5:30 p.m." *See, e.g.*, Dkt. 15-8, Ex. 7, at AIC 170.

| Initials of Preparer | | : | |
|---|---|---|---|
| | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

the discharge summary established that Pureco's claim was worth the $100,000 policy limits. PSMF ¶ 46. That day, Andrews called Zeytuntsyan's office to offer the $100,000 to settle Pureco's claim. *Id.* ¶ 47. Andrews also sent a letter to Zeytuntsyan that same day. *Id.* ¶ 48. Zeytuntsyan did not respond to either. *Id.* ¶ 49.

On May 19, 2014, Pureco filed a lawsuit against David and Felipe Carrillo. *Id.* ¶ 50. Defendant continued to offer its policy limits to settle the claims, but all of the offers were rejected by Pureco. *Id.* ¶ 51. Pureco won a $5 million judgment against David Carrillo, and Defendant paid its policy limits of $100,000 to Pureco as partial satisfaction of the judgment. *Id.* ¶ 52.

Defendant's instant motion for summary judgment was filed on July 20, 2018. Defendant seeks summary judgment that it did not act in bad faith and that there is no clear and convincing evidence of Defendant's fraud, oppression or malice (as required for Plaintiffs to win punitive damages).

**III.    Legal Frameworks**

**A.    Summary Judgment**

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must draw all inferences from the facts in the non-movant's favor, *id.*

Initials of Preparer                    :

                                PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

at 255, but when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.    Bad Faith Failure to Settle Claims**

"Every contract imposes on each party an implied duty of good faith and fair dealing." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001). This implied duty obligates insurance companies "to make reasonable efforts to settle a third party's lawsuit against the insured." *Graciano v. Mercury Gen. Corp.*, 231 Cal. App. 4th 414, 425 (2014). "If the insurer breaches the implied covenant by unreasonably refusing to settle the third party suit, the insured may sue the insurer in tort to recover damages proximately caused by the insurer's breach." *Id.*

The test for bad faith relies primarily on the reasonableness of the parties' conduct. *Id.* Thus, to succeed on a claim of bad faith, a plaintiff "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Chateau Chamberay*, 90 Cal. App. 4th at 346.

There are two elements to an insured's claim for bad faith based on an alleged wrongful refusal to settle. First, the plaintiff must prove that "the third party made a reasonable offer to settle the claims against the insured for an amount within the policy limits." *Graciano*, 231 Cal. App. 4th at 425. An offer to settle "satisfies this first element if (1) its terms are clear enough to have created an enforceable contract resolving all claims had it been accepted by the insurer, (2) all of the third party claimants have joined in the demand, (3) it provides for a complete release of all insureds, and (4) the time provided for acceptance did not deprive an insurer of an adequate opportunity to investigate and evaluate its insured's exposure." *Id.*

Second, the plaintiff must prove that "the insurer unreasonably failed to accept an otherwise reasonable offer within the time specified by the third party for acceptance." *Id.* at 426. "[W]hen a

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

liability insurer *timely* tenders its full policy limits in an attempt to effectuate a reasonable settlement of its insured's liability, the insurer has acted in good faith as a matter of law." *Id.* (quotation marks and citations omitted).

**C.      Punitive Damages**

In order to recover punitive damages in California for a breach of the implied covenant of good faith and fair dealing, a plaintiff must "prove[] by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff" or "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "Oppression" refers to "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). Lastly, "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3).

By the definitions themselves, then, establishing punitive damages requires more than proving bad faith. *See Shade Foods, Inc. v. Innovative Prods. Sales & Mktg.*, 78 Cal. App. 4th 847, 909 (2000) ("[T]he evidence required to support an award of punitive damages for breach of the implied covenant of good faith and fair dealing is of a different dimension from that needed to support a finding of bad faith." (quotation marks and citation omitted)). Consequently, a "marginally sufficient case of bad faith is not likely to prove malice or oppression by clear and convincing evidence." *Id.* at 909-10. Furthermore, the evidence must not be merely consistent with a theory of oppression, fraud, or malice; rather, "some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 n.14 (1994).

Initials of Preparer                :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

## IV.    Analysis

### A.    Bad Faith Claim

#### i.    *Reasonableness of Pureco's Settlement Demand*

To prevail on their bad faith claim, Plaintiffs must first establish that Pureco made a reasonable offer to settle the claims against Carrillo for an amount within the policy limits. Defendant argues that Pureco's settlement demand was unreasonable as a matter of law for three independent reasons: (1) it did not include a complete release of all insureds; (2) it exposed Defendant and its insureds to additional liability; and (3) it did not give Defendant an adequate opportunity to investigate and evaluate the claim. The Court addresses these arguments in turn.

#### 1.    *Complete Release of All Insureds*

As discussed above, in California, an insurer has a duty to accept only reasonable settlement offers. Generally, in order for a settlement offer to be reasonable, it must (among other things) provide for a complete release of all insureds. *Graciano*, 231 Cal. App. 4th at 425.

Defendant argues that Pureco's settlement offer did not provide for a complete release of all insureds because it was directed to "Your Insured: Felipe Carrillo" and did not mention David Carrillo. In opposition, Plaintiffs contend that Defendant's argument is precluded by *Madrigal v. Allstate Indem. Co.*, 697 Fed. Appx. 905 (9th Cir. 2017). In *Madrigal*, the settlement offer did not expressly release all insured parties. *Id.* at 907. The defendant in that case, which happened to be Allstate, argued that it was entitled to judgment as a matter of law for that reason. *Id.* However, the Ninth Circuit affirmed the district court's rejection of this argument; it held that a "reasonable jury . . . could conclude that [the] demand was reasonable, triggering Allstate's good faith duty to accept it," because a "reasonable jury could have concluded that [the] demand (1) was directed to Mr. Tang (the known insured), but (2) incorporated a condition that Allstate provide an 'appropriate release' that included other insureds (whether disclosed or not) whom Allstate may have deemed necessary for the resolution of the claim." *Id.* at 908.

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

Plaintiffs correctly apply *Madrigal*. Here, as in *Madrigal*, Pureco's settlement demand did not expressly mention all insureds. However, it did include an express condition that Defendant deliver an "appropriate Release of All Claims form"—which precisely matches the language relied on by the Ninth Circuit. Furthermore, Andrews stated that she understood a "release of all claims" to release *all* parties that are related to the claim.

Defendant contends that *Madrigal* is distinguishable because the district court relied on the fact that Mrs. Tang—the party that was not named in the settlement demand—was not known to the claimant. *See Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 899-900 (C.D. Cal. 2016). However, although the district court may have relied on that fact, the Ninth Circuit did not adopt that reasoning. Rather, the Ninth Circuit expressed a broader rule, wherein a condition that an insurance company provide an "appropriate release" that includes other insureds (whether disclosed or not in the demand) is sufficient to render the demand reasonable. *Madrigal*, 697 Fed. Appx. at 908. Thus, Pureco's demand letter was not unreasonable as a matter of law on this ground.

> ## 2. *Exposure to Additional Liability*

Defendant alternatively argues that Pureco's demand was unreasonable because it would have left the insureds and Defendant exposed to a potential claim for Medi-Cal reimbursement. Under California Welfare and Institutions Code Section 14124.71(a), the Department of Health Care Services ("DHS") has a right to recover from a third-party tortfeasor or the tortfeasor's insurance carrier the reasonable value of Medi-Cal benefits provided to a Medi-Cal beneficiary. *See Fitch v. Select Prod. Co.*, 36 Cal. 4th 812, 818-19 (2005). Because DHS's right to reimbursement is independent of an injured claimant's rights, *McMillian v. Stroud*, 166 Cal. App. 4th 692, 698 (2008), a settlement offer that does not include DHS may expose the insurer and its insureds to a future recoupment action from DHS. Here, as Defendant notes, the ambulance report enclosed with the demand letter showed that Pureco was receiving Medi-Cal benefits, but the settlement offer did not include DHS.

Plaintiffs point to *Anguiano v. Allstate Ins. Co.*, 209 F.3d 1167 (9th Cir. 2000) to rebut this argument. In *Anguiano*, a plaintiff alleged that defendant Allstate had acted in bad faith when it failed to inform its insureds about the plaintiff's settlement offers. *Id.* at 1169. In that case, as here, Allstate argued that it did not have a duty to inform its insureds about the settlement offers because the offers

Initials of Preparer : 

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

failed to account for a Medi-Cal lien over any settlement proceeds paid to the plaintiff. *Id.* The Ninth Circuit rejected this argument, holding that Allstate's "failure to inform [its insureds] about [the] settlement offers present[ed] a genuine issue of material fact" regarding Allstate's acting in bad faith— despite the asserted Medi-Cal lien issue—and reversing the district court's grant of summary judgment in favor of Allstate. *Id.* at 1170. Defendant attempts to distinguish *Anguiano* by arguing that in the instant case, Allstate informed its insureds about the claim. However, Defendant *admits* that it never informed David Carrillo about the demand, apparently relying on Felipe Carrillo to do so. Allstate's Reply Memorandum ("Rep."), Dkt. 19, at 5. As Plaintiffs note, Defendant cites no authority that an insurer can fulfill its duty to inform all of its insureds by having one pass along the information to the others. Thus, as in *Anguiano*, the fact that a settlement demand fails to account for a Medi-Cal lien does not render the demand unreasonable as a matter of law.

### 3.    *Adequate Opportunity to Investigate the Claim*

Defendant alternatively argues that Pureco's settlement demand did not give it adequate time to investigate and evaluate the claim. As discussed in *Graciano*, the deadline associated with a settlement demand must not deprive the insurer of an adequate opportunity to investigate the claim. 231 Cal. App. 4th at 425. However, Defendant's argument is merely that, under these *facts*, the settlement demand was unreasonable. For example, Defendant points to the facts that the demand gave Defendant "just 19 days" to accept it, and that the fax containing the USC Medical Center discharge summary was sent to Defendant only the "Friday before the Monday deadline to accept." Mot. at 18. Based on these facts, among others, Defendant concludes that the demand is not "a reasonable one." *Id.* at 19.

Defendant cites no legal authority to support this argument, likely because case law suggests that this fact-specific determination is of the type squarely reserved to the jury. *See Madrigal v. Allstate Indem. Co.*, No. CV 14-4242 SS, 2015 WL 12747906, at *14 (C.D. Cal. Sept. 30, 2015) ("[W]hether the time limit set forth in the January 15, 2010 settlement demand was reasonable in the circumstances of this case is a question of fact. Accordingly, the Court DENIES Allstate's motion for summary judgment . . . ."); *Coe v. State Farm Mut. Auto. Ins. Co.*, 66 Cal. App. 3d 981, 994 (1977) ("Whether appellant 'refused' the 'offer,' and whether it could reasonably have acted otherwise in light of the 11-day deadline imposed by the offer's terms, were questions for the jury."). Thus, the demand is not unreasonable as a matter of law on this ground.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

       4.     *Summary*

      Defendant's arguments as to why Pureco's settlement demand was unreasonable as a matter of law are unavailing. The Court turns to the second element that Plaintiff must prove: the unreasonableness of Defendant's failure to accept Pureco's settlement demand.

        ii.     *Reasonableness of Defendant's Failure to Accept Pureco's Settlement Demand*

      To prevail on their bad faith claim, Plaintiffs must also establish that Defendant unreasonably failed to accept the otherwise reasonable offer within the time specified by Pureco for acceptance. Here, the Court agrees with Defendant that, on this record, no reasonable jury could conclude that Defendant acted unreasonably.

       1.     *Substantial Likelihood of an Excess Judgment*

      Defendant argues that its failure to accept Pureco's settlement demand was, as a matter of law, not unreasonable. Under California law, an insurer has a duty to settle a claim against its insured within policy limits only when "there is a substantial likelihood of a recovery in excess of those limits." *Johansen v. Cal. State Auto. Assn. Inter-Ins. Bureau*, 15 Cal. 3d 9, 15 (1975); *see also Highlands Ins. Co. v. Continental Cas. Co.*, 64 F.3d 514, 517 (9th Cir. 1995). Defendant initially determined that Pureco was 75% liable for the accident and Carrillo was 25% liable. Based on that assessment, Pureco's damages would have had to be at least $400,000 to justify Defendant's settling for the policy limit of $100,000.

      Defendant contends that it did not have sufficient information to evaluate Pureco's injuries or, alternatively, that the known injuries did not establish a substantial likelihood that Pureco's damages were worth $400,000. Plaintiffs, by contrast, do not directly address Defendant's "substantial likelihood" argument, but rather focus on the facts that Defendant was aware of—the nature of the accident and the description of Pureco's injuries in the disclosed reports, including Pureco's GCS scores. Plaintiffs also rely on their medical expert, who reported that such GCS scores indicated that a major traumatic brain injury had more than likely occurred.

Initials of Preparer           :

                                     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

     A threshold issue to consider is whether there is a dispute of fact regarding Defendant's initial assessment that Pureco was 75% at fault and that Carrillo was 25% at fault. Plaintiffs do not dispute that Defendant initially determined that Carrillo was 25% at fault. However, Plaintiffs contend that Defendant "selectively looked at only favorable facts" in determining fault. PSMF ¶ 20. In particular, Plaintiffs argue that Defendant ignored the severity of Pureco's injuries and that Carrillo was traveling in excess of the speed limit. *Id.* However, the severity of Pureco's injuries are irrelevant to proportional liability, and Defendant's claim diary expressly notes that its liability determination considered Carrillo's speeding. Dkt. 15-8, at CN 32. Plaintiffs also argue that Pureco and Carrillo were ultimately found to each be 50% at fault in the subsequent jury trial, but such a fact—which of course was not available to Defendant and which was based on additional facts not available to Defendant when it made its initial assessment—does not cast doubt on Defendant's earlier determination of fault.

     As Defendant correctly notes, its determination that Carrillo was 25% at fault entailed that there must have been a substantial likelihood that Pureco's damages would be at least $400,000 in order to impose a duty on Defendant to accept Pureco's settlement demand. Plaintiffs claim that "a reasonable jury could . . . conclude that [Defendant] had ample information the policy limits should be paid" because Defendant knew that Carrillo was speeding, that Carrillo's vehicle was totaled (with Defendant paying $18,000), that Pureco's vehicle sustained "major damage," that Pureco was rendered unconscious, that Pureco had difficulty breathing and was bleeding from the head, that Defendant's claims examiner considered the injury to be "serious," and that Pureco scored between 5 and 7 on the GCS. Plaintiffs' Opposition to Allstate's Motion for Summary Judgment ("Opp."), Dkt. 17, at 14. Furthermore, Plaintiffs claim that Defendant should have investigated more fully, such as by consulting a medical professional to learn about the GCS and by speaking with passengers of the vehicle who could have described the circumstances of the accident. *Id.* at 14-15.

     Even if the Court were to assume Defendant's actual or constructive knowledge of all of these facts, Plaintiffs have not raised a triable issue of material fact as to the key legal question: whether there was a substantial likelihood of an excess judgment based on the information in Defendant's possession when the settlement demand deadline expired. Plaintiffs have presented and argued the information that was or should have been known to Defendant, but have not provided any evidence that such information established a substantial likelihood of an excess judgment. Indeed, Plaintiffs do not quantify any of the damage caused by the accident other than an $18,000 cost to Defendant to cover Carrillo's totaled

                                                        :

Initials of Preparer

                                  PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

vehicle. The other evidence that comes closest to establishing serious injury is Pureco's GCS scores and the expert's conclusion that it was more than likely that Pureco had suffered major traumatic brain injury. But this conclusion does not provide any specifics that would help to quantify the injuries, such as whether the injury was permanent or temporary.

A preliminary indication that an injury is serious is not at all the same as a substantial likelihood that damages will total at least $400,000. On this record, no reasonable jury could conclude that there was a substantial likelihood of an excess judgment when the settlement demand expired. Thus, Defendant did not face a duty to settle the claim in the first instance, and so could not have acted unreasonably by refusing to settle.

### 2.        *Conscious Disregard of the Insured's Interests*

Under California law, conduct that is deemed to be unreasonable for the purpose of a bad faith claim must be "prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Chateau Chamberay*, 90 Cal. App. 4th at 346. Defendant argues that its conduct amounts to, at most, negligence—which as a matter of law does not constitute bad faith. This is not disputed by Plaintiffs, who never allege that Defendant acted consciously and deliberately to deprive Pureco of the benefits of its insurance agreement with Carrillo.[5]

The allegations, taken at face value, are that Defendant mistakenly failed to accept Pureco's policy demand by the deadline because it did not believe that Pureco's injuries were worth $400,000. That Defendant ultimately was wrong is simply not enough for a reasonable jury to find that Defendant acted *unreasonably*—i.e., consciously and deliberately—by failing to accept Pureco's settlement demand. *See id.* at 351 ("[T]here is no factual issue as to 'bad faith' on AIIC's part. It is not enough to say . . . that AIIC could have done a better job in adjusting HOA's claim. Sloppy or negligent claims handling does not rise to the level of bad faith."); *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 728

---

[5]        Plaintiffs do not argue in their opposition brief that Defendant acted consciously and deliberately. In fact, they do not address Defendant's argument.

Initials of Preparer                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

(2007) ("[A] *mistaken* withholding of benefits or delay in payment is not bad faith where it is reasonable or based on a genuine dispute as to the insurer's liability.").

>    3.    *Timeliness of Defendant's Tender of Policy Limits*

Defendant contends that its tender of the policy limits one day after Pureco's deadline establishes good faith as a matter of law. Defendant relies primarily on *Graciano* to support its contention that "timely tender of the full policy limits establishe[s] that [an insurer] act[s] in good faith as a matter of law." Mot. 20-21. Defendant correctly summarizes the law from *Graciano*, but incorrectly applies it; *Graciano* did not provide any guidance in a case where, as here, an insurer's tender of policy limits occurs after the claimant's deadline—and thus is *not* timely. *See Madrigal*, 2015 WL 12747906, at *14 ("Allstate relies in part on *Graciano* for its argument that an insurer that makes or accept a policy limits settlement offer cannot be held liable for bad faith, even if the acceptance is untimely. However, *Graciano* does not support that proposition.").

A more instructive case is *Madrigal*. In *Madrigal*, a claimant sent a settlement demand for the policy limit that required the insurer to accept within thirty days. *Id.* at *4. This letter was sent on January 15. On January 29, Allstate accepted the demand. *Id.* at *5. However, on February 4, Allstate revoked its acceptance on the ground that there was a dispute regarding coverage. *Id.* Then, on February 19, less than a week after the expiration of the thirty-day acceptance window, Allstate again agreed to pay the policy limit. *Id.* at *6. The claimant considered its demand to have been rejected because Allstate's purported acceptance occurred after the expiration date. *Id.* The district court denied Allstate's motion for summary judgment because the reasonableness of Allstate's belated acceptance depended on the reasonableness of the time limit imposed by the claimant. *Id.* at *14. However, the court also noted that an insurer's failure to accept a settlement demand by a deadline imposed by the claimant is *not* per se unreasonable. *Id.* ("However, that does not mean that in all circumstances, an insurer's failure to accept a settlement demand within an acceptance deadline is unreasonable.").

Here, Defendant argues that it did not accept Pureco's offer by the deadline only because it was lacking the complete set of Pureco's medical records—in particular the discharge summary from USC Medical Center. Plaintiffs contend that Defendant had enough information to justify a settlement without the discharge summary or, alternatively, that Defendant could have obtained the discharge summary

Initials of Preparer

:

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

earlier with more diligence.

The relevant facts are undisputed. On March 5, 2014, Defendant received a letter from Zeytuntsyan, which enclosed a medical authorization for USC Medical Center, but the letter authorized disclosure of medical records only to "The Law Offices of Andrew Zeytuntsyan, PC." On March 6, 2014, Zeytuntsyan sent a letter to Defendant instructing it to "disregard" the authorization he had sent the day before and enclosing another authorization form that did not comply with the HIPAA statute. On March 14, 2014, Defendant followed up with Zeytuntsyan, asking for copies of Pureco's medical records and bills. Zeytuntsyan did not reply to the March 14, 2014 letter. It was only on Friday, April 11, at 4:39 p.m., that Zeytuntsyan sent Pureco's two-page discharge summary to Defendant. Andrews was out of the office on April 14, which was the deadline for the settlement demand. Andrews first saw the discharge summary when she returned to the office on April 15, and that very same day offered to settle for the policy limits. Plaintiff declined that offer. Defendant continued to offer its policy limits to settle the claim, but all of the offers were rejected by Pureco.

The crux of Plaintiff's argument is that Defendant acted in bad faith by accepting Plaintiff's settlement demand one day after the deadline. Yet a review of the facts reveals that Defendant acted as any reasonable insurer would. Once it found the record lacking regarding Pureco's medical condition, it requested additional medical records; indeed, it made such a request on multiple occasions. Those requests were denied or ignored altogether by Pureco's counsel. Based on the information it possessed at the time of the settlement demand deadline, Defendant declined to tender policy limits. But, once it was finally able to review Pureco's hospital discharge report, it offered to tender policy limits—indeed, it did so that very day. Notably, Defendant received the relevant medical report less than a full business day before the deadline.[6] On this record, no reasonable jury could find that Defendant acted in bad faith.

---

[6]     Plaintiffs argue that Defendant never attempted to submit the March 6 letter "in conjunction with" the March 5 letter to obtain the medical records, essentially admitting that each letter was defective (but in different ways). PSMF ¶ 8. However, Defendant was not required by law to exhaust all possible options (such as submitting all of the different authorization letters in various combinations); rather, it was required only to act reasonably.

Initials of Preparer                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

       *iii.*    *Summary*

    In sum, the Court rejects Defendant's various arguments as to why the settlement demand was unreasonable as a matter of law. However, the Court agrees that, on this record, no reasonable jury could find that Defendant acted unreasonably in rejecting Pureco's settlement demand. *See McDaniel v. Gov't Employees Ins. Co.*, 681 Fed. Appx. 614, 616 (9th Cir. 2017) (reversing the trial court's denial of summary judgment and directing the district court to enter judgment for the insurer because no reasonable jury could conclude that it unreasonably refused to settle). Thus, the Court GRANTS Defendant's motion for summary judgment as to the bad faith claim.

    **B.**    **Punitive Damages Claim**

    Defendant also seeks partial summary judgment to preclude the availability of punitive damages. As discussed above, to recover punitive damages a plaintiff must prove, by clear and convincing evidence, that the defendant is guilty of oppression, fraud, or malice.

    Crucially, oppression, fraud, and malice all require more egregious conduct than that which is merely conscious or deliberate. Fraud, for example, requires an intentional misrepresentation, deceit, or concealment of a material fact with the intention of depriving a person of property or legal rights or otherwise causing injury. Malice requires conduct that is intended by the defendant to cause injury to the plaintiff—or despicable conduct that is carried on with willful and conscious disregard of the rights or safety of others. "Despicable" conduct, under California law, is conduct that is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *In re First All. Mortg. Co.*, 471 F.3d 977, 998 (9th Cir. 2006). Oppression also requires despicable conduct—it is despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

    The only facts that Plaintiffs rely on to claim punitive damages are: (1) Defendant made no effort to contact David Carrillo or explain the settlement demand to either David or Felipe Carrillo; (2) Defendant made no effort to clarify the settlement offer to include David Carrillo; (3) Defendant took no affirmative steps to provide the requested information to demonstrate that David Carrillo had no other assets; and (4) Defendant failed to request an extension on the demand expiration date. Opp. at 25. In

| Initials of Preparer | : |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-02079-SVW-FFM | Date | November 27, 2018 |
|---|---|---|---|
| Title | *Antonio Pureco et al. v. Allstate Indemnity Co.* | | |

sum, argue Plaintiffs, "the evidence establishes that Allstate sought to protect only its own interests, and acted in conscious disregard for the interests of its insured." *Id.*

Based on the Court's assessment that no reasonable jury could find that Defendant acted unreasonably in rejecting Pureco's settlement demand, the same is true here. The facts that Plaintiffs recount come nowhere close to the vile, base, contemptible, miserable, wretched, or loathsome conduct necessary to recover punitive damages under the malice and oppression prongs, and there is simply no fraud alleged. In sum, because no reasonable jury could find by clear and convincing evidence that Defendant engaged in oppression, fraud, or malice, the Court GRANTS Defendant's motion for summary judgment on this issue.

**V.      Conclusion**

For the above reasons, the Court GRANTS Defendant's motion for summary judgment.

IT IS SO ORDERED.

Initials of Preparer                      :

PMC

1  Re: *Pureco v. Allstate Ins. Co.*
2  Case No.: 2:18-cv-02079-SVW-FFM

3              **CERTIFICATE OF SERVICE**

4  I hereby certify that on **December 6, 2018**, I electronically filed the foregoing
5  document entitled [PROPOSED] FINAL JUDGMENT with the United States
   District Court for the Central District.  Notice will be automatically e-mailed to
6  the following individuals registered with the Court's CM/ECF System:

7

8  Peter H. Klee, Esq.
9  Thomas R. Proctor, Esq.
   SHEPPARD MULLIN RICHTER & HAMPTON
10 501 West Broadway, 19th Floor
11 San Diego, CA  92101-3598
12 (619) 338-6500
   FAX:  (619) 234-3815
13 Email:  pklee@sheppardmullin.com
14          tproctor@sheppardmullin.com

15

16
   I declare that I am employed in the office of a member of the bar of this court at
17 whose direction the service was made.

18 Executed on **December 6, 2018,** at Claremont, California.
19

20              _____/s/Debbie Hunter_____
21              DEBBIE HUNTER

22

23

24

25

26

27

28